0987

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — —

CASE NO: _____

ASHVIN ZAVERI, RED FOX RUN CORPORATION AND
ZAVERI OIL & GAS, LTD., individually and in their
representative capacities as Managers and/or Managing
partners of certain NYS General Partnerships,

PLAINTIFFS,          *COMPLAINT*

V.

CONDOR PETROLEUM CORPORATION,
    PO Box 80901, Lafayette, LA 70508

DEFENDANT.

— — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — —

Plaintiffs, by their attorney Frank A. Aloi, Esq., for their Complaint against defendant, alleges as follows:

# PARTIES

1.    At all times here in issue, plaintiff Ashvin Zaveri ("Zaveri) was and is an individual residing in the County of Monroe, and State of New York. [note, at times in the writings between the parties "Zaveri" is mis-spelled by defendant as "Zavarie"; Zaveri and Zavarie are one and the same person]

2.    At all times here in issue, plaintiff Red Fox Run Corporation ("Red Fox") was and is a NY corporation, with an office and place of business in Rochester, NY.

3.    At all times here in issue, plaintiff Zaveri Oil & Gas, Ltd. ("ZOG") was and is a NY corporation with an office and place of business in Rochester, NY.

4.    At all times here in issue, Zaveri was and is a shareholder of Red Fox, and ZOG, their operating officer and manager, and their principal.

5.      Regarding the events and occurrences here in issue, ZOG became the successor in interest of Red Fox (hereinafter, these corporations referred to as Red Fox/ZOG).

6.      At all times here in issue, Zaveri and Red Fox were united in interest, and Zaveri operated Red Fox virtually as his alter-ego, and agent.

7.      At all times here in issue, Zaveri and ZOG were united in interest, and Zaveri operated ZOG virtually as his alter-ego, and agent.

8.      At all times here in issue, Zaveri and Red Fox, and then Zaveri and ZOG, were in the business of providing personal capital and raising investor capital for financing all aspects of oil and gas ventures - including without limitation, exploration, acquisition of leases, drilling rights, extraction, storage, pipeline and other transportation to refineries, marketing and sale rights, arrangements, and ventures - at different locations in the United States.

9.      Upon information and belief, at all times here in issue, defendant Condor Petroleum Corporation ("Condor") was and is a corporation chartered and doing business in the State of Louisiana, which, at all times here in issue entered into contracts, including joint ventures and partnerships, with land and well owners to acquire mineral lands, to lease and otherwise exploit mineral lands, and to provide services as well operator(s), to locate, and extract oil and gas, and to transport, refine, and market oil and gas products, for their account, and for the accounts of their joint venturers and partners.

10.     Upon information and belief, at all times here in issue, defendant Condor finances the development and operation of its oil and gas business by the solicitation of partnerships, arrangements, and ventures for the purpose of raising investor capital from different persons and entities in the USA, including the State of NY.

11.    At all times here in issue, Condor "did business in the State of NY" as that term is used in the NY CPLR section 302, and also had sufficient "minimum contacts" under the International Shoe doctrine with the State of New York, in its business relationships with NY investors, to support the jurisdiction of the Courts of New York in this matter.

**COMPLAINT MADE TO ASSERT INDIVIDUAL RIGHTS OF PLAINTIFFS TO FIFTY PERCENT (50%) OWNERSHIP IN THE NORTH OSSUN FIELD,  AND BY PLAINTIFFS IN THEIR REPRESENTATIVE CAPACITIES ON BEHALF OF CERTAIN NEW YORK GENERAL PARTNERSHIPS HAVING WORKING INTERESTS IN CERTAIN WELLS IN  THE NORTH OSSUN FIELD**

12.    Zaveri and Red Fox/ZOG make this complaint in support of their claims and interests, concerning a certain 50% ownership interest in the North Ossun Field, and joint venture contractual relationships regarding oil and gas lands, and leases, in the North Ossun Field, with defendant which are the subject matter of this lawsuit.

13.    Also, Zaveri and Red Fox/ZOG make this Complaint on behalf of certain New York General Partnerships, of which one or more of them are the Managing Partners, which New York General Partnerships in consideration of working interests in certain wells in the North Ossun Field, raised development money at the request of defendant for the purpose of promoting and facilitating its oil and gas business(es) in Louisiana, all pursuant to a certain joint venture between plaintiffs and defendant, as is more particularly described and stated in the following paragraphs.

# JURISDICTION

14.   Jurisdiction is based on the following:

   A.   Diversity of citizenship, the parties being residents and domiciliaries of different States, with the plaintiffs being residents and domiciliaries and/or doing business in the State of New York, and the defendant being chartered and doing business in the State of Louisiana, and  the amount in issue exceeding the jurisdictional minimum required by the governing statute, i.e., 28 USC sec. 1332; except as stated hereinafter, Plaintiffs' claims are based  both on diversity of citizenship, and supplemental jurisdiction pursuant to NY CPLR 302, defendant "doing business" in the State of NY, and/or defendant committing tortious conduct in the State of New York - in the conversion of monies belonging to plaintiffs personally and the New York General Partnerships which they manage.

   B.   Defendant's actions here in issue concerning  each plaintiff (and their investor/client's)  monies and accounts violated section 10(b) of the Securities and Exchange Act of 1934, 15 USC section 78j(b), and Rules 10b-5 and 10b-10 promulgated thereunder, 17 CFR section 240.10b-5, 10b-10.

   C.   There is a real and present case and controversy between the parties, with issues presently justiciable, under the Federal Declaratory Judgment Act, 28 USC sec 2201.

   D.   Supplemental Jurisdiction to adjudicate State claims that are integrally related to the Federal Claims hereinafter stated.

   E.   "Long arm" jurisdiction predicated upon Condor "doing business" in the State of New York, under principles of "International Shoe" and/or section 302 of the NY CPLR.

# VENUE

15.     Venue is based on the "doing of business" by Condor in the State of New York, and the commission of tortious conduct in the State of New York by Condor, specifically, and without limitation,

A.     defendant's knowledge beginning in or about 1991 that plaintiffs were and are in the business of raising investment capital from their personal funds, and also from New York investors through NY General partnerships (managed and  represented by plaintiffs) to fund joint ventures or partnerships with persons or companies  for the acquisition of oil and gas leases, and the development,  exploitation, and operation of oil and gas drilling, extraction, transportation,  refining, and product marketing and sales;

B.     the consummation of the N. Ossun Field joint ownership investment and development agreements between the parties in New York by direction of a writing memorializing the agreement by and with Condor to and with plaintiffs, in their personal and individual capacities, and in their representative capacities, in New York,

C.     after establishing a joint ownership relationship with plaintiffs concerning the N. Ossun field, ongoing contacts with plaintiffs soliciting their interest in financing the development and exploitation of the N. Ossun Field  ("N. Ossun"), in Lafayette Parish, Louisiana,

D.     the circulation by Condor of investment materials, including Condor's engineering and geologic reports and studies, as well as company and officer profiles, for inclusion in New York General Partnerships, which were formed for the purpose of raising money for the mutual development with Condor of  the N. Ossun Field , in Lafayette Parish, Louisiana, in the State of New York,

E.     Condor specifically directing these investment materials and geologic studies and reports to Zaveri and Red Fox/ZOG, and their NY General Partnership investors, persons and entities known by Condor to be residents and domiciliaries of the State of NY,

F.     the solicitation by Condor of investment funds from Zaveri and Red Fox/ZOG (and their NY General Partnership investors);

G.     Condor's knowledge that it was dealing with New York General Partnership investors through plaintiffs with regard to its investment solicitations,

H.     Condor's direct solicitation of New York investors, by its invitation to plaintiffs and certain of plaintiffs' NY investors and consultants to visit its business offices in Louisiana,  and tour the oil and gas lease areas that are the subject matter of this litigation, including fields, and wells in existence and to be drilled, in Louisiana;

I.     Condor hosting and reimbursing the expenses of tours of the venture Louisiana oil and gas fields, leases, and facilities, on at least three separate occasions, in or about the  '90's by plaintiffs and certain of its NY investors, on or about dates as indicated, who included the following persons:

Edward and Peter Massare             [on or about 6/17/'94]
50 Eagle Rock Drive E
Rochester, NY 14609

Charles and Melissa Githler II       [on or about 6/17/'94]
1155 Wellington Drive
Victor, NY 14564

Judge Andrew V. and Maria A. Siracuse
105 Clearview Drive                  [on or about 6/17/'94]
Penfield, NY 14526

Lalit Shah                              [on or about 6/17/'94]
20 Pond View Lane
Penfield, NY 14526

Joseph Amisano, Esq.        [on or about 10/'93]
408 Mendon-Ionia Rd.
Honeoye Falls, NY 14472

Ashvin Zaveri                        [all trips]
49 Sycamore Ridge
Honeoye Falls, NY 14472

Kusum Zaveri                [on or about 6/17/'94]
49 Sycamore Ridge
Honeoye Falls, NY 14472

Dr. Angelo Bianchi          [on or about 6/17/'94]
1935 N. Clinton Ave.        [and second trip]
Rochester, NY 14621

Anthony Daniele, Esq.       [trip in '97]
104 Holiday Harbour
Canandaigua, NY 14424

J.      Condor making solicitations, and conducting presentations concerning the value and desirability of making financial investments in the venture's Louisiana oil and gas leases, fields, and facilities, for plaintiffs and their NY investors, as above, in Louisiana in or about the early '90's;

K.      the participation and cooperation of Condor with plaintiffs in the preparation of Private Placement Memorandums (PPM's), and filings of certain NY General Partnerships, upon information and belief, including

1992 Sonnier No. 1 Well New York General Partnership;

1993 B.B. Trahan No. 1 Twin Well New York General Partnership;

Sonnier-Miller NY General Partnership;

1994 J. Comeaux No. 1 Twin Well New York General Partnership;

1995 G. Domingue Well, New York General Partnership;

1995 North Side Water Flood New York General Partnership;

1996 Mayer/Vertical New York General Partnership;

7

2000 Saul Sonnier Partnership 2000 New York General Partnership;

all of which were formed solely for the purpose of selling investor units to the NY investors referenced above, which funds after payment of administrative expenses, were then transferred to Condor based on its budgets, in payment of the North Ossun Field venture expenses of Condor (in which Zaveri and Condor each had 50% ownership interests), and specifically, for exploration, leasing, and operating expenses for certain identified wells in the N. Ossun Field in which plaintiffs' and the NY General Partnerships also had working interests,

L.      the provision by Condor of specific oil and gas geology studies as well as company information, biographical information about its principals, and marketing information, which studies and information Condor knew would be incorporated in the NY General Partnerships, formed at its request for the purpose of raising investor capital for the development and exploitation of the N. Ossun Field in Lafayette Parish, Louisiana;

M.      the actual raising of the investment funds by Zaveri and Red Fox/ZOG in New York (both third party NY investor funds, NY General Partnerships, and personal funds of Zaveri), at Condor's request;

N.      the receipt from the NY General Partnerships (and investor partners) of the NY investors' funds by check, draft, or wire transfer by Condor in Louisiana;

O.      for a significant time period pursuant to the agreement (some seven plus years), the acknowledgment, recognition, and ratification of the agreement by Condor, both by the partial return of the investment of Zaveri and Red Fox/ZOG by Condor in New York (specifically, the direction by Condor of funds to the plaintiffs, the New York General Partnerships, and their NY investors by wire and mailings of checks to plaintiffs in NY), and similarly, by the rendering of accountings and payment in New York by Condor of the agreed cash flow after customary expenses to Zaveri and Red Fox/ZOG, all directed to plaintiffs and their NY General Partnerships, and investors through the mails and by fax, in NY.

# THE CONTROVERSY

16.     In 1991, Condor first approached Zaveri to personally contribute money to finance  its purchase of the N. Ossun Field, and to thereafter contribute both personal and investor money to finance the development, and exploitation of an oil and gas property known and designated as the North Ossun Field, sec. 12 & 13 T 9S R3, Lafayette Parish, Louisiana ("the property" or "N. Ossun").

17.     As used herein "Zaveri" means both Ashvin Zaveri, and the Red Fox Run corporation, and the Zaveri Oil & Gas Ltd. corporation, and any other persons or instrumentalities ( including the aforementioned NY General Partnerships ) acting with, or at the direction of Zaveri,  or for and on behalf of Ashvin Zaveri concerning his 50% ownership interest in the North Ossun Field, and in the raising of investor capital for partnership working interests in certain specified wells in the instant N. Ossun project development.

18.     Condor proposed that Ashvin Zaveri personally contribute $32,000. to Condor for a 50% ownership interest in the N. Ossun Field, and its exploitation, which he did, in consideration of the 50% ownership interest, which ownership interest was thereafter memorialized in a writing between Zaveri and Condor.

19.     Ashvin Zaveri's interest in the property terminates only at such time as Condor and Zaveri agree that the oil and gas producing potential for the property (and any wells on the property, or which can be drilled on the property) has been exhausted.

20.     Condor provided to Ashvin Zaveri a Model Form Operating Agreement ("Operating Agreement") dated November of 1991, intended to govern the agreements and relationship between the parties, and proposed as such by Condor, which was received by plaintiff in January of '93, and approved for execution by Ashvin Zaveri to state the governing principles and working relationship between the parties.

21.     The provisions of the Operating Agreement state that Louisiana law would govern the issues of performance, duties, interpretation, and breach among other issues between the parties (Art. XIV, "B"); the Operating Agreement is silent as to the jurisdiction and/or venue of any litigation that might ensue concerning the rights and liabilities of the parties.

22.     The Operating Agreement also states that "Nothing herein shall prevent any party from suing any defaulting party to collect consequential damages accruing to such party as a result of the default" (Art. VII "D", 2).

23.     The Operating Agreement further states that "In the event any party is required to bring legal proceedings to enforce any financial obligation of a party hereunder, the prevailing party in such action shall be entitled to recover all court costs, costs of collection, and a reasonable attorney's fee, which the lien provided for herein shall also secure."  (Art. VII "D", 5).

24.     The Operating Agreement states further that "Each party grants to the other parties hereto a lien upon any interest it now owns or hereafter acquires in Oil and Gas leases and Oil and Gas Interests in the Contract Area, and a security interest and/or purchase money security interest in any interest it now owns or hereafter acquires in the personal property and fixtures on or used or obtained for use in connection therewith, to secure performance of all of its obligations under this agreement including but not limited to payment of expense, interest and fees, the proper disbursement of all monies paid hereunder, the assignment or relinquishment of interest in Oil and Gas Leases as required hereunder, and the proper performance of operations hereunder.  Such lien and security interest granted by each party hereto shall include such party's leasehold interests, working interests, operating rights, and royalty and overriding royalty interests in the Contract Area now owned or hereafter acquired and in lands pooled or unitized therewith or otherwise becoming subject to this agreement, the Oil and Gas when extracted therefrom and equipment situated thereon or used or obtained

for use in connection therewith   . . . , and accounts . . . , contract rights, inventory and general intangibles relating thereto or arising therefrom, and all proceeds and products of the foregoing . . . ."  (Art. VII "B")

25.   The Operating Agreement also provided that if a well was shut down by the operator, the other owner must be immediately notified of that circumstance, and that unless work on the well was resumed within 90 days, the lease would terminate; the Operating Agreement required the parties "to act in good faith in their dealings with each other with respect to activities hereunder."  (Art. VII "A")

26.   Condor from time to time solicited plaintiffs to raise by NY General Partnerships (primarily from their NY investors) funds (stated by Condor in budgets it prepared and delivered to plaintiffs) represented by Condor to be necessary to the successful oil extraction, transportation, refining, marketing, and distribution of revenues from certain of the wells located in the N. Ossun Field in which both Condor and plaintiffs had an ownership interest, specifically and without limitation, as follows:

A.    1992 Ellie Sonnier No. 1 Well New York General Partnership - which raised $260,000, which was paid by plaintiffs to Condor; plaintiff, Ashvin Zaveri and/or his wife Kusum Zaveri, personally own(s) an 11.5% interest in this partnership; as managing partner, Ashvin Zaveri has also been entitled to an additional percentage of the net revenue paid to the partnership because the original investments of the general partners have been paid out (with each General Partner having a residual interest commensurate with their partnership ownership percentage, in the net proceeds of the partnership well(s) as indicated in the General Partnership Articles, for the stated term of the Partnership);

B.      1993 B.B. Trahan No. 1 Twin Well New York General Partnership -
        which raised $1,150,000, which was paid by plaintiffs to Condor; plaintiff,
        Ashvin Zaveri and/or his wife Kusum Zaveri, personally own(s) a 7.5%
        interest in this partnership; as managing partner, Ashvin Zaveri has also
        been entitled to 25% of the net revenue paid to the partnership pursuant to
        the partnership agreement from and after the date when the general
        partners were repaid  their original investments; (with each General
        Partner having a residual interest commensurate with their partnership
        ownership percentage, in the net proceeds of the partnership well(s) as
        indicated in the General Partnership Articles, for the stated term of the
        Partnership);

C.      The Sonnier-Miller NY General Partnership - which raised funds
        requested by Condor for the venture, and which thereafter were paid by
        plaintiffs to Condor; plaintiff, Ashvin Zaveri and/or his wife Kusum
        Zaveri, personally own(s) an 8.5% interest in this partnership; as
        managing partner, Ashvin Zaveri has also been entitled to 25% of the net
        revenue paid to the partnership pursuant to the partnership agreement from
        and after the date when the general partners were repaid  their original
        investments; (with each General Partner having a residual interest
        commensurate with their partnership ownership percentage, in the net
        proceeds of the partnership well(s) as indicated in the General Partnership
        Articles, for the stated term of the Partnership);

D.      1994 J. Comeaux No. 1 Twin Well New York General Partnership; which
        raised $750,000 which was paid by plaintiffs to Condor; plaintiff, Ashvin
        Zaveri and/or his wife Kusum Zaveri, personally own(s) a 10% interest in
        this partnership; as managing partner, Ashvin Zaveri has also been entitled
        to 25% of the net revenue

paid to the partnership pursuant to the partnership agreement from and after the date when the general partners were repaid  their original investments;  (with each General Partner having a residual interest commensurate with their partnership ownership percentage, in the net proceeds of the partnership well(s) as indicated in the General Partnership Articles, for the stated term of the Partnership);

E.    1995 G. Domingue Well, New York General Partnership; which raised $950,000 which was paid by plaintiffs to Condor; plaintiff, Ashvin Zaveri and/or his wife Kusum Zaveri, personally own(s) a 7.5% interest in this partnership; as managing partner, Ashvin Zaveri has also been entitled to 25% of the net revenue paid to the partnership pursuant to the partnership agreement from and after the date when the general partners were repaid their original investments;  (with each General Partner having a residual interest commensurate with their partnership ownership percentage, in the net proceeds of the partnership well(s) as indicated in the General Partnership Articles, for the stated term of the Partnership);

F.    1995 North Side Water Flood New York General Partnership; which raised $1,200,000 which was paid by plaintiffs to Condor; plaintiff, Ashvin Zaveri and/or his wife Kusum Zaveri, personally own(s) an 8.5% interest in this partnership; as managing partner, Red Fox Run Corporation (Ashvin Zaveri, principal) has also been entitled to 25% of the net revenue paid to the partnership pursuant to the partnership agreement from and after the date when the general partners were repaid their original investments;  (with each General Partner having a residual interest commensurate with their partnership ownership percentage, in the net proceeds of the partnership well(s) as indicated in the General Partnership Articles, for the stated term of the Partnership);

27.     Based on the prior representations by and between the parties, and the provisions of the Operating Agreement at least in part memorializing them, as above, on November 8, 1995, as well as the performance of plaintiffs to and for the benefit of defendant, Condor by letter signed by W. Wayne Evitt, Vice President, and addressed to Ashvin Zavarie (nee "Zaveri" and Red Fox Run Corporation) affirmed the Agreement between the parties as follows:

"Dear Ashvin,

In accordance with previous meetings and discussions concerning the above project I would like to reduce to writing our agreement.

**I[n] consideration of Red Fox Run Corporation contributing one million dollars to the above referenced project you will receive a 50% interest in the acreage, wells and equipment. Red Fox Run Corporation will receive 70% of the net income until such time as Red Fox Run Corporation has received its investment of one million dollars and 50% of the net income thereafter, for the life of the commercial production**. [emphasis added]

If this is not our agreement, please let me know.

_____"

28.     The Condor letter of November 8, 1995 accurately stated the agreement of the parties, with the agreements and undertakings in the Operating Agreement of '91, referenced above, and these writings are hereinafter referred to as "the agreement", and this "agreement" is the contract between the parties here in issue.

29.     Pursuant to the November 8, 1995 letter as above from Condor, Zaveri at the request of Condor formed another NY General Partnership to raise money needed by Condor to put into production or to increase oil production from the Mayer/Vertical Well - the 1996 Mayer/Vertical Well NY General Partnership, in which Ashvin Zaveri and/or Kusum Zaveri, his wife, own a 5% interest in the partnership; $1,470,000 was raised by this partnership for Condor, which funds were paid to Condor as requested. Each General Partner of the 1996 Mayer/Vertical Well NY General Partnership is entitled to the pay back of their investment in the partnership, and also has a continuing residual interest

commensurate with their partnership ownership percentage, along with Zaveri as managing partner who likewise has a percentage residual interest (after investors receive back the amount of their invested monies), in  the net proceeds of the partnership well(s) as indicated in the General Partnership Articles, for the stated term of the Partnership).

30.     As indicated above, Zaveri is the owner and operator, and controlling person, of Zaveri Oil & Gas Ltd., a New York corporation ("ZOG"), in the business of raising investor capital for purchase of ownership interests in domestic oil and gas properties.

31.     As above indicated, it was through  ZOG NY General Partnerships that Zaveri (and Red Fox run) raised the investment money (principally from the NY investors, and Zaveri personally) required by Condor to acquire, develop, and exploit the N. Ossun Field property, and certain specific wells, as indicated - and paid that money in full to Condor as agreed, upon information and belief, in an aggregate amount exceeding $5,000,000.00.

32.     Zaveri holds the ownership interests in the property personally pursuant to the venture with Condor; Zaveri also is the owner of certain working interests in identified wells,  and also with the other plaintiffs as representatives of the identified NY General Partnerships' working interests in certain wells on the property; as Condor paid production revenues over the years to Zaveri and/or the NY General Partnerships above identified, Zaveri then distributed these revenues to himself according to his personal ownership interest in each partnership, for his management fees for each partnership, with the remainder then being paid to the other general partner investors in each partnership.

33.     At all times here in issue, Condor was aware of the fact that Zaveri represented NY General Partnerships, and that the funds provided by Zaveri were NY investor funds in NY General Partnerships, as well as his own, to develop and exploit the field and wells from the property.

34.     The ongoing relationship between Zaveri and Condor concerning the ownership, and development and exploitation of the N. Ossun Field, and certain specific wells in that field, were evidenced both by the November 8, 1995 letter as above, and by a series of letters from Condor (per Wayne Evitt) to Zaveri, stating ownership interests of Zaveri in certain identified wells for which operating revenues were raised by Zaveri at Condor's request,  copies of which are incorporated herein by reference, which stated:

A.     <u>May 9, 1994 Letter</u>

**"Ashvin Zavarie is the owner of 36.43 percent working interest in Condor Petroleum Corporation's interest in the E. Sonnier #1 unit**. The E. Sonnier #1 unit is producing, depending on price, approximately $500,000.00 per month.  Operating expense of the Sonnier unit is approximately $30,000.00 per month . . . ."   [emphasis added]

B.     <u>June 10, 1994 Letter</u>

"In addition to the E. Sonnier #1 unit outlined in my letter of May 9, 1994, Mr. Zavarie owns a net revenue interest in three other units owned by Condor Petroleum Corporation as follows:

|  | Zavarie<br>Interest | Net Income | Zavarie |
|---|---|---|---|
| **B.B. Trahan #1** | **37.5%** | 146,264.85 | 54,849.31 |
| **B.B. Trahan #2** | **37.5%** | 22,826.94 | 8,560.10 |
| **Domingue #1** | **37.5%** | 12,876.00 | 4,828.50 " |

[emphasis added]

C.     <u>June 28, 1994 Letter</u>

**"Condor Petroleum Corporation and Ashvin Zaveri acquired the oil and gas property known and designated as the North Ossun Field, sec. 12 & 13  T  9S  R3, Lafayette Parish, Louisiana, by purchase from Phillips Petroleum Corporation on September 1, 1992.**"
[emphasis added]

35.     Condor thereafter, upon information and belief, pursuant to the agreement of the parties, developed and exploited the oil property in the N. Ossun Field for its own account and for Zaveri, and rendered periodic accountings and money distributions paid to Zaveri and his NY General Partnerships, pursuant to which Zaveri received net revenue payments from the property (wells), after deduction of royalty payments, and operating expenses.  Each of those accountings prepared by Condor, with Condor's distribution checks, in the period 1998 to 2002 were sent to plaintiffs as managers of the NY General Partnerships, and to plaintiffs personally, in the State of New York, and upon information and belief, totaled in the aggregate an amount exceeding $5,000,000.00.

36.     In the year 2002, Condor began arbitrarily reducing payments to Zaveri, without documenting the financial reasons for the reductions, and eventually, Condor entirely ceased making accountings and financial distributions to Zaveri from the property oil and gas sales in the N. Ossun field.

37.     Condor upon information and belief first cited the expense of litigation with land owners and also EPA regulatory issues, as reasons for the cessation of accountings and monetary distributions to Zaveri, all of which are believed to have been pretextual.

38.     Upon information and belief, since 2002, there has been continuing production, and there have been net distributable revenues from the property (wells) of the N. Ossun field, subject to the agreement between the parties, after deduction of royalty payments, and operating expenses, but Condor has neither made the payments to Zaveri, nor has Condor rendered accountings to Zaveri, although Zaveri has made repeated demands for payments and/or accountings for same from Condor, in 2003, and after.

# AS AND FOR A FIRST CLAIM

39.     Repeats and realleges paragraphs "1" through "38" hereinbefore stated.

40.     Condor has breached the ownership agreement with Zaveri to acquire, develop, and exploit oil and gas on the property and to share bottom line revenues after deduction of customary and actual operating expenses; specifically, upon information and belief,

     A.     Condor has withheld net revenues from Zaveri and the plaintiff corporations, for their personal interests, and their representative interests as managers of the enumerated NY General Partnerships;

     B.     In addition, upon information and belief, Condor as the operator of the leased wells, did not work the wells as required by the agreements between the parties and the law, and/or decided to abandon certain wells, so that certain of the leases would lapse, and in doing so, Condor, contrary to the Operating Agreement, and its customary duties as the operator, failed to notify plaintiffs and the NY General Partnerships of its (Condor's) intention to abandon the wells, so that plaintiffs and the NY General Partnerships could have the opportunity to work the wells and in so doing, preserve and continue the leases - all of which had serious financial consequences to plaintiffs and the NY General Partnerships.

41.     Condor also breached its obligation of "good faith" and fair dealing in the performance and implementation of its agreement with plaintiffs, when it reduced and eventually withheld net revenues from plaintiffs, and failed to account for these revenues from '02 to the present, and exercised exclusive possession and control over the North Ossun Field, of which Zaveri was and is a 50% owner.

42.     Condor eventually barred Zaveri and his duly authorized representatives from its
business premises, and refused them any access to the books and production
records concerning the subject properties, wells, and leases.

43.     Zaveri has suffered direct damage by way of the withheld net revenue payments
from Condor, for both his 50% ownership interest in the N. Ossun Field, and his
specific percentage ownership interests in the NY General Partnerships that raised
the funds required by Condor, including also management fees for these
partnerships to which Zaveri was entitled,  as well as the ownership interests of
the NY General Partnerships in the wells in question; plaintiffs have also suffered
consequential damages. Plaintiffs' claim(s)  is/are based on both diversity of
citizenship, and supplemental jurisdiction pursuant to NY CPLR 302, defendant
"doing business" in the State of NY, and defendant's tortious conduct in the State
of New York.

44.     Zaveri has made due demand on Condor for the net revenue payments as above,
but Condor has failed and refused to make the payments.

## AS AND FOR A SECOND CLAIM

45.     Plaintiffs repeat and reallege paragraphs "1" through "44" above.

46.     Plaintiffs are partner joint venturers with defendant in the ownership, and
development and exploitation of the oil and gas property and wells that are the
subject matter of the agreement between the parties.

47.     Defendant as the "operator" in this contract/venture to develop and exploit the oil
field known as the N. Ossun Field, which field was developed primarily with the
NY investor capital solicited by defendant, and raised by plaintiffs, is in a
fiduciary relationship with plaintiffs.

48.     Defendant breached its fiduciary relationship and obligations with and to plaintiffs, including the NY General Partnerships plaintiffs represent and manage, and, and, upon information and belief, defendant has self-dealt in the assets, value, and financial benefits of its contract and venture with plaintiffs in the N. Ossun Field, misappropriating them, and has intentionally deprived plaintiffs of their rights and entitlements in and to the financial benefits of the contract and venture, accruing from their ownership interests, all as are stated and confirmed in the written memos and letters from Condor to plaintiffs.

49.     Accordingly, defendant has withheld net revenues from the production of the North Ossun Field wells to which plaintiffs personally, and the NY General Partnerships they represent and manage, are entitled;

50.     By reason thereof, plaintiffs have been damaged, all as is more specifically set forth in paragraph 43 above.  Plaintiffs' claim(s)  is/are based on both diversity of citizenship, and supplemental jurisdiction pursuant to NY CPLR 302, defendant "doing business" in the State of NY, and defendant's tortious conduct committed in the State of NY.

51.     Zaveri has made due demand on Condor for the net revenue payments as above, but Condor has failed and refused to make the payments.

## AS AND FOR A THIRD CLAIM

52.     Plaintiffs repeat and reallege paragraphs "1" through "51" above.

53.     Defendant has upon information and belief appropriated both the property and revenues from its oil reserves to itself; the property and withheld revenues withheld by defendant as above are in the possession and control of defendant, and in equity and good conscience 50% thereof, belongs to plaintiffs.

54.     Defendant has exercised possession, dominion, and control of the entire North Ossun Field, to the detriment of Zaveri who is the 50% owner of the field, as well as to the detriment of the plaintiff corporations.

55.     The withheld property and revenues are subject to the equitable lien of plaintiffs, including the physical possession of the properties, and proceeds of funds received from the extraction and sale of oil and gas therefrom, which were diverted by defendant to itself or other third parties having no right, title, or interest in the funds.

56.     Plaintiffs are entitled to the imposition of a constructive trust on such withheld property and funds belonging to plaintiffs, and their proceeds by this Court. Plaintiffs' claim(s)  is/are based on both diversity of citizenship, and supplemental jurisdiction pursuant to NY CPLR 302, defendant "doing business" in the State of NY, and the commission of tortious conduct by defendant in the State of New York.

## AS AND FOR A FOURTH CLAIM

57.     Plaintiffs repeat and reallege paragraphs "1" through "56" above.

58.     Inasmuch as the controversy between the parties is a real case and controversy, and presently justiciable as such, plaintiffs are entitled to a declaration of their rights under the Agreement vis a vis the defendant, pursuant to the Federal Declaratory Judgment Act, 28 USC 2201, including without limitation, both

A.      their agreement(s) and entitlement(s) concerning the ownership, development, and exploitation of the oil and gas reserves in the N. Ossun Field, Lafayette Parish, Louisiana;

B.      their entitlement to past net revenues from production wrongfully withheld by defendant,

C.      their entitlement to present and prospective net revenues from production, and

D.      a declaration that Zaveri is the owner of a 50% interest in the North Ossun Field, and to certain percentage ownership interests of identified wells (both personally and in their representative capacity as managers of the NY General Partnerships),  the fruits of which defendant has and continues to wrongfully appropriated to its own account..

## AS AND FOR A FIFTH CLAIM

59.     Plaintiffs repeat and reallege paragraphs 1 through 58 above.

60.     Defendant has breached the Agreement with plaintiff, which is both an express contract, and a contract implied in law.

61.     Defendant has breached its obligation of fair dealing and good faith in the performance of its Contractual Agreement with plaintiffs.

62.     Plaintiffs have suffered direct and consequential damages by reason of defendant's breach of the Agreement with plaintiffs.

63.     Plaintiffs have made due and repeated demands on defendant to cease and desist its unlawful conduct, and to perform the contractual agreement between the parties, and restore to plaintiffs their rights under the agreement, and to make restitution to plaintiffs of their interest in the property, and all of the wrongfully withheld proceeds of production, but defendant has failed and refused to do so.

64.     Plaintiffs' claim is based on both diversity of citizenship, and supplemental jurisdiction pursuant to NY CPLR 302, defendant "doing business" in the State of NY, and defendant committing tortious acts in the State of New York.

## AS AND FOR A SIXTH CLAIM

65.     Plaintiffs repeat and reallege paragraphs 1 through 64 above.

66.     Defendant retains plaintiffs' property and money as above, despite plaintiffs' clear entitlement in law and in equity to the payment of the net income from the wells in the N. Ossun field.

67.     Accordingly, defendant has been unjustly enriched, at plaintiffs' expense, and is obligated in law and in equity to restore to plaintiffs their interest in the N. Ossun Field, and to pay plaintiffs' the monies to which they are entitled.

68.     Plaintiffs' claim is based on both diversity of citizenship, and supplemental jurisdiction pursuant to NY CPLR 302, defendant "doing business" in the State of NY, and on defendant's tortious conduct in the State of New York.

## AS AND FOR A SEVENTH CLAIM

69.     Plaintiffs repeat and reallege paragraphs 1 through 68 above.

70.     Defendant has no claim of right to plaintiffs' money as above.

71.     Defendant's retention of plaintiffs' monies is in law and in fact an intentional conversion of plaintiffs' monies for which plaintiffs and each of them are entitled both to the return of their monies, and such additional damages as may be determined by this Court.

72.     Plaintiffs' claim is based on both diversity of citizenship, and supplemental jurisdiction pursuant to NY CPLR 302, i.e., defendant "doing business" in the State of NY, and committing "tortious conduct" in the State of NY, and on defendant's tortious acts in the State of New York.

## AS AND FOR A EIGHTH CLAIM

73.     Plaintiffs repeat and reallege paragraphs 1 through 72 above.

74.     As the operator of the North Ossun Field for plaintiffs, defendant stands in a fiduciary relationship with plaintiffs and each of them.

75.     Defendant's misconduct as above provides the equitable basis for the finding by this Court that defendant has breached a contract implied in law with plaintiffs, and to plaintiffs' entitlement to equitable relief by way of restitution from defendant, as well as a mandatory injunction against defendant, compelling defendant to cease and desist its unlawful and wrongful conduct concerning the property of plaintiffs, and further compelling defendant to account to plaintiffs.

76.     Plaintiffs have no adequate remedy at law.

77.     Plaintiffs' claim(s)  is/are based on both diversity of citizenship, and supplemental jurisdiction pursuant to NY CPLR 302, defendant "doing business" in the State of NY, and defendant's tortious conduct committed in the State of NY.

## AS AND FOR A NINTH CLAIM

78.     Plaintiff repeats and realleges paragraphs 1 through 77 above.

79.     At all times here in issue, defendant was aware that the source of the funds plaintiffs would pay to defendant pursuant to the agreement for the development of the N. Ossun field, i.e., upon information and belief, the $5,000,000.00, as raised in each of the enumerated partnerships, were both the personal funds of plaintiffs, and private investor funds from investor clients (principally from NYS) represented by plaintiffs, and their related company, Zaveri Oil & Gas, Ltd., the General Partner of  related NY General Partnerships as above, formed by plaintiffs with the assistance of defendant, to raise the funds required by defendant for the development of specific joint venture wells in the N. Ossun field.

80.     This solicitation of investment funds by Condor from plaintiffs through a NY General Partnership for the financing of the development of the wells in the N. Ossun field in fact and in law was the sale of ownership interests and net income entitlements to plaintiffs, which in law and in fact are securities.  .

81.     Defendant's actions as above concerning each plaintiffs (and their NY General Partnership investor/client's)  monies and accounts violated section 10(b) of the Securities and Exchange Act of 1934, 15 USC section 78j(b), and Rules 10b-5 and 10b-10 promulgated thereunder, 17 CFR section 240.10b-5, 10b-10.

82.     Specifically, section 10(b) of the Exchange Act prohibits any person involved in the "purchase or sale of any security" from employing "any manipulative or deceptive device or contrivance in contravention of such rules and regulations' as the SEC "may prescribe."

83.     Rule 10b-5 makes it unlawful for a person to make material misstatements or to omit material facts in connection with the purchase or sale of any security.

84.     Defendant induced the investments by plaintiffs and their NY General Partnership investor clients by representing that defendant would pay to plaintiffs and their NY General Partnership investor clients  70% of the net income from the wells in the N. Ossun field until such time as plaintiffs have received their investment; and thereafter 50% of the net income  from the wells in the N. Ossun field for the life of the commercial production.

85.     Defendant violated Rule 10b-5 concerning its solicitation of the investment funds of plaintiffs and their clients  in that defendant did not intend to pay plaintiffs (and their clients) 70% of the net income from the wells in the N. Ossun field until such time as plaintiffs have received their investment; nor did defendant intend to pay 50% of the net income thereafter from the wells in the N. Ossun field for the life of the commercial production.

86.     Defendant's violations included fraudulent misrepresentations in the inducement, as above, and also subsequent schemes, representations, and artifices by defendant, known to be false when made to plaintiffs, for the purpose of convincing plaintiffs that defendant was not paying plaintiff(s) their fair share of the net operating revenues from the wells in the N. Ossun Field, because of extraordinary  operating expenses - which operating expenses were, upon information and belief, invented and fabricated.

87.     Moreover, defendant made further false and fraudulent representations in the implementation, management, and operation of the partnership venture agreement - specifically fabricated expenses based on alleged landowner claims or litigation that were either outrightly false, or significantly exaggerated, and/or EPA regulatory requirements (including stop work orders, and major repair directives) that were either outrightly false, or significantly overstated and exaggerated, as pretextual reasons for depriving plaintiffs and their NY investors of their ownership interest in the N. Ossun Field, and their entitlement to their share of the net revenues therefrom.

88.     Further, upon information and belief, Condor as the operator of the leased wells, did not work the wells as required by the agreements between the parties and the law, so that certain of the leases lapsed, and in doing so, failed to notify plaintiffs and the NY General Partnerships of its (Condor's) intention to abandon the wells, so that plaintiffs and the NY General Partnerships could have the opportunity to work the wells and in so doing, preserve and continue the leases - all of which had serious financial consequences to plaintiffs and the NY General Partnerships.

89.     Defendant well knew that it induced the investments by plaintiffs (and their clients) with false performance representations as above.

90.     Defendant further well knew that it induced continuing forbearance by plaintiffs and their NY investors with the pretextual operating issues and problems as above stated, in the assertion of their property and income rights.

91.     Defendant's violations of Rule 10-b-5 has caused plaintiffs (and their clients) to suffer damage.

## AS AND FOR A TENTH NTH CLAIM

92.     Plaintiff repeats and realleges paragraphs 1 through 91 above.

93.     All books and records concerning the property and the oil and gas production from the wells on the property, and the expenses of the exploitation and marketing of oil and gas reserves on the property, are in the exclusive possession and control of Condor.

94.     Condor is and has been the operator and manager of the property for the account of Zaveri, as above indicated, and in such capacity, Condor has a fiduciary relationship with Zaveri, and a fiduciary obligation of fair and timely reporting, and accounting of operating revenues and expenses to Zaveri.

95.     Upon information and belief, the net revenue payments by Condor to Zaveri began significantly decreasing in the last quarter of 2000, continuing through August of 2002, when payments from Condor stopped.

96.     Condor made no credible explanations to Zaveri concerning the noted trend in net revenue payments, or the fact that payments and accountings were not made after August of 2002.

97.     Upon information and belief, Condor has withheld the accountings from Zaveri, as well as the net revenue payments after August of 2002 because it has diverted the funds to its own account, or for other purposes, all without explanation or justification, and in breach of its agreement with Zaveri.

98.     On the foregoing, Zaveri is entitled to an accounting of operations, royalties, expenses, and revenues for the past 7 years from Condor.

## ON EACH CLAIM AN ASSESSMENT OF PUNITIVE DAMAGES

99.     Plaintiffs repeats and realleges paragraphs 1 through 97 above.

100.    Defendant's conduct herein has been intentional, willful, and aggravated; it is also of the type that injures not only the plaintiffs and their investors, but also could have adverse consequences to the investor public generally, i.e., opening future investors to damages because of defendant's wrongful conduct, and discouraging other investors from making investments in the oil and gas business generally, a vital industry.

101.    On the foregoing, Plaintiffs are entitled to an assessment of punitive damages in an amount as the Court may determine,  against defendant.

**WHEREFORE**, Plaintiffs request Judgment against defendant Condor as follows:

A.　　On the First Claim, money damages in the estimated amount of $5,000,000.00, with interest - subject to revision as and when the Condor operating records are made available to plaintiffs;

B.　　On the Second Claim, money damages in the estimated amount of $5,000,000.00, with interest - subject to revision as and when the Condor operating and financial records are made available to plaintiffs;

C.　　On the Third Claim, the imposition of a constructive trust on the North Ossun Field consistent with plaintiff Zaveri's 50% ownership interest; and the imposition of a constructive trust on the withheld net proceeds of operations from the wells in the North Ossun Field in which Zaveri has a personal interest, and in which the NY General Partnerships managed by plaintiffs have working interests;

D.　　On the Fourth Claim, a declaration of the rights of the parties as indicated;

E.　　On the Fifth Claim, money damages in the estimated amount of $5,000,000.00, with interest - subject to revision as and when the Condor operating records are made available to plaintiffs;

F.　　On the Sixth Claim, money damages in the estimated amount of $5,000,000.00, with interest - subject to revision as and when the Condor operating records are made available to plaintiffs;

G.　　On the Seventh Claim, money damages in the estimated amount of $5,000,000.00, with interest - subject to revision as and when the Condor operating records are made available to plaintiffs;

H.     On the Eighth Claim, a mandatory injunction enjoining defendant from its wrongful withholding of monies representing plaintiffs' interests in the field and wells, and the interests of the NY General Partnerships in certain of the wells, and money damages in the estimated amount of $5,000,000.00 with interest - subject to revision as and when the Condor operating records are made available to plaintiffs.

I.     On the Ninth Claim, money damages in the estimated amount of $5,000,000.00 with interest - subject to revision as and when the Condor operating records are made available to plaintiffs.

J.     On the Tenth Claim, an accounting as requested.

With an assessment of punitive damages on Claims One through Three, and Five through Nine, as the Court may determine.

Dated: 8 December 2008
       Rochester, NY

_s/ Frank A. Aloi_

Frank A. Aloi, Esq., Attorney for Plaintiffs
980 Westfall Road, Ste. 127
Rochester, NY 14618
(585) 262-3660, fax 262-3666, email: faappeals@aol.com

_s/ Samuel F. Prato_

Samuel F. Prato, Esq., Associate Counsel for Plaintiffs
106 Cobblestone Ct. Dr. #169
Victor, NY 14564, (585) 325-5900, e-mail: sfp@pratolaw.com