# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ASHVIN ZAVERI, ET AL. | * | CIVIL NO. 6:09-1606 |
| VERSUS | * | MAGISTRATE JUDGE HILL |
| CONDOR PETROLEUM | * | BY CONSENT OF THE PARTIES |
| CORPORATION | | |

## REASONS FOR JUDGMENT

Pending before the Court are the Motion for Partial Summary Judgment [rec. doc. 224] and Motion for Summary Judgment [rec. doc. 227] filed by Condor Petroleum Corporation ("Condor").  The plaintiff Partnerships and Partner/Investors (collectively "the Partnerships"), the Estate of Ashvin Zaveri ("the Estate"), Red Fox Run Corporation ("Red Fox") and Zaveri Oil & Gas, Ltd. ("ZOG") (collectively "the Zaveri plaintiffs") have filed Opposition to both Motions [rec. docs. 231 and 232], to which Condor filed Replies. [rec. docs. 236 and 241].  A hearing on the Motions was held on May 28, 2014, and the Motions were taken under advisement.

For the reasons set forth below, the Motion for Partial Summary Judgment [rec. doc. 224] is **GRANTED** and Motion for Summary Judgment [rec. doc. 227] is **GRANTED in part and DENIED in part**. Accordingly, all of the remaining claims of the Partnerships and Partner/Investors (unjust enrichment, third party beneficiary and punitive damages) are dismissed; the Zaveri plaintiffs' fiduciary duty, constructive trust,  unjust enrichment, conversion and punitive damages claims are dismissed and the Zaveri plaintiffs' breach of

contract, breach of obligation of good faith and fair dealing, declaratory judgment, breach of implied contract and accounting claims remain pending.

## BACKGROUND

This suit arises from an alleged contract between Condor and the late Ashvin Zaveri involving oil and gas development in the North Ossun Field in Lafayette Parish, Louisiana. Funding for these activities was allegedly procured through the use of  New York general partnerships, eight of which, as well as all investor partners in these eight partnerships, were joined pursuant to Court order.

The Estate of Zaveri and his alter ego corporations, Red Fox and ZOG, the Zaveri plaintiffs, allege the following claims against Condor: breach of contract,  breach of implied contract, breach of obligation of good faith and fair dealing, breach of fiduciary duty, constructive trust,  unjust enrichment, conversion, accounting, declaratory judgment, and punitive damages.

The Partnerships and Partner/Investors initially asserted numerous claims against Condor, all of which, except their unjust enrichment, third party beneficiary and punitive damage claims, have previously been dismissed.

The agree that Louisiana substantive law applies to this case.

## LAW AND ANALYSIS

**Standard on Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]

Rule 56(e) provides, in pertinent part, as follows:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)[2], the court may: . . . (3) grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it . . . .

The Motions for Summary Judgment are properly made and supported.  Thus, the plaintiffs may not rest upon the allegations in their pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).  However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those

---

[1]Rule 56 was revised, effective December 1, 2010, "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts.  The standard for granting summary judgment remains unchanged." *See* Committee Notes, Rule 56.

[2]Rule 56(c)(1) provides, in pertinent part, as follows:
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Moreover, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552. Thus, with respect to those issues on which the movant bears the burden of proof at trial, the movant need not produce evidence negating the existence of material fact, but may merely point out the absence of evidence supporting the non-movant's case. *Id.* at 2553-2554; *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1992).

## I. Claims of the Partnerships

### A.  Unjust Enrichment

The Louisiana Supreme Court has set forth five elements for a cause of action based on unjust enrichment: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of 'justification' or 'cause' for the enrichment and the impoverishment; and (5) there must be no other remedy at law available to the plaintiff. *Baker v. Maclay Properties Co.*, 648 So.2d 888, 897 (La.1/17/95). The plaintiff must prove each of the five elements. *Carriere v. Bank of Louisiana*, 702 So.2d 648, 658 (La. 1996); *Fagot v. Parsons*, 958 So.2d 750, 752–753 (La. App. 4th Cir. 2007).

Condor argues that the Partnerships cannot satisfy the fifth element and, therefore,

4

summary judgment on their unjust enrichment claim must be granted.[3]   The Partnerships

respond, arguing that their unjust enrichment claim should survive under this Court's

procedural pleading rule, Rule 8, F.R.C.P., which allows alternative claims to be pled.

Louisiana Civil Code article 2298 provides in pertinent part:

> A person who has been enriched without cause at the expense of another person
> is bound to compensate that person. The term "without cause" is used in this
> context to exclude cases in which the enrichment results from a valid juridical act
> or the law. The remedy declared here is subsidiary and shall not be available if
> the law provides another remedy for the impoverishment or declares a contrary
> rule.

Accordingly, under Article 2298, the remedy of unjust enrichment is "subsidiary" in

nature, and "shall not be available if the law provides another remedy." *Walters v. MedSouth*

*Record Management, LLC*, 38 So.3d 243, 244 (La. 2010) *citing Carriere v. Bank of Louisiana*,

702 So.2d 648, 671 (La. 1996) (on rehearing).  Thus, "the unjust enrichment remedy is only

applicable to fill a gap in the law where no express remedy is provided." *Walters*, 38 So.3d at

244.  Stated differently, "where there is a rule of law directed to the issue, an action must not

be allowed to defeat the purpose of said rule." *Carriere*, 702 So.2d at 657.

"The existence of a 'remedy' which precludes application of unjust enrichment does not

connote the ability to recoup your impoverishment by bringing an action . . . [i]t merely

connotes the ability to bring the action or seek the remedy." *Carriere*, 702 So.2d at 673 (on

rehearing). Thus, "[t]he mere fact that a plaintiff does not successfully pursue another available

---

[3]Condor also challenges the Partnerships ability to satisfy the third and fourth elements.
However, because the Court finds that the fifth element cannot be satisfied, it will not reach Condor's
additional arguments.

remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."
*Walters*, 38 So.3d at 244 *citing Jim Walter Homes v. Jessen*, 732 So.2d 699, 706 (La. App. 3
Cir. 3/31/99) ("[t]o find that Jim Walter Homes now has no other remedy and to provide it one
under unjust enrichment would be tantamount to allowing any plaintiff who let his cause of
action prescribe, or any plaintiff who knowingly wrote a bad contract, to recover under an
enrichment theory").

Furthermore, the remedy provided by unjust enrichment is precluded where the
available remedy at law is against someone other than the person against whom the claim is
presently asserted.  *Carriere*, 702 So.2d at 672-673 (on rehearing) (holding that a lessor's
unjust enrichment action for rental payments asserted against a bank which purchased the
lessee's "leasehold estate" and occupied, used and enjoyed that estate, was precluded because
the lessor had another remedy at law available to them against the person liable to them under
the law, namely, an action against the lessee for failure to pay rent); *Fagot*, 958 So.2d at 753
(holding that because the plaintiff had a cause of action against her brokerage firm and broker
for recovery of investment funds, she could not assert an unjust enrichment cause of action
against broker's wife); *Bank of Abbeville & Trust Co.*, 201 Fed. Appx. 988, 2006 WL 2870972
(5th Cir. 2006) (holding that the availability of a remedy against a Bank's customer to recover
the amount of an overdraft precluded an unjust enrichment claim against a title company for
which the customer was an attorney and issuing agent); *Williams v. Chesapeake Louisiana,
Inc.*, 2013 WL 951251, *7 (W.D. La. 2013) ("The Louisiana courts of appeals have also made
clear that an unjust enrichment claim will not lie so long as the law provides a remedy for the

enrichment against anyone, not only the defendant against whom the unjust enrichment claim is asserted.") *citing Hall v. James*, 986 So.2d 817 (La. App.2008) (no unjust enrichment claim against other mineral royalty interest holder when mineral lessee underpaid plaintiffs and overpaid other royalty holders, because plaintiffs have contractual claim against lessee), *Fagot, supra.* and *Solieau v. ABC Ins. Co.*, 844 So.2d 108, 111 (La. App. 2003) (no unjust enrichment cause of action against party who was enriched by defendant's theft when plaintiff settled with defendant and obtained a judgment of restitution against that defendant).

In this case, there is no gap in the law, and there is a legal remedy available to the Partnerships.  These legal remedies include causes of action against the Estate of Zaveri, Red Fox and/or ZOG for breach of contract, and/or breach of fiduciary duty.  Accordingly, the Partnerships cannot establish an absence of another remedy at law available to them, an element necessary to prevail on their unjust enrichment claim.  Summary judgment is therefore proper.

Furthermore, while the Partnerships claim that they should be permitted to maintain their unjust enrichment claim as having been alternatively pled with other claims, the Court rejects that argument.  As correctly held by Judge Feldman of the Eastern District, under Louisiana law, an unjust enrichment claim is a "subsidiary" claim, not an alternative claim, which cannot be pursued when Louisiana law affords any other legal remedy.  *JP Mack Industries v. Mosiac Fertilizer*, LLC, 970 F.Supp.2d 516, 521 and fn. 2 (E.D. La. 2013); *see also United Disaster Response, LLC v. Omni Pinnacle, LLC*, 569 F.Supp.2d 658, 666 (2008)

(rejecting an argument that unjust enrichment could be pled in the alternative to a breach of

contract action).  While some district courts have permitted unjust enrichment claims to be pled

in the alternative, apparently in reliance on federal procedural law[4], as Judge Feldman correctly

noted in *JP Mack Industries*, those courts did so without analyzing the effect of such a ruling

on Louisiana substantive law.  *JP Mack Industries*, 970 F.Supp.2d at 521 fn. 2.

   The Court agrees with Judge Feldman that Louisiana law, as set out in the Louisiana

State Supreme Court's decision in *Walters*, supports the rulings of those federal courts,

including this Court, which have held that the availability of another remedy bars a plaintiff's

claim for unjust enrichment, regardless of whether the plaintiff prevails in his pursuit of those

other remedies.  *Id*.; *see e.g. General Accident Ins. Co. of America v. Aggreko*, LLC 2012 WL

6738217, *2 (W.D. La. 2012) (and cases cited therein including *Wiggins v. Chesapeake Energy

Corp*., 2012 WL 3597131, *2 (W.D. La. 2012),  *Central Facilities Operating Co., L.L.C. v.

Cinemark U.S.A., Inc*., 2012 WL 1121217, *3 (M.D. La. 2012), *Spectrum Commc'n Specialists,

LLC v. KMJ Servs., Inc*., 2012 WL 138942, *5 (E.D. La. 2012), *Westbrook v. Pike Elec.,

L.L.C.*, 799 F.Supp.2d 665, 672 (E.D. La. 2011)); *Constance v. Austral Oil Exploration, Co.,

Inc.,* 2013 WL 6578178, *9 (W.D. La. 2013) (holding that "Unjust enrichment is a specific

cause of action that may not be asserted against a defendant as a mere catchall or safety net in

the event that a plaintiff fails to succeed on the merits of his or her other claims."); *United

---

[4]*See e.g. Property One, Inc. v. US Agencies, LLC,* 830 F.Supp.2d 170, 175 (M.D. La. 2011).  The
undersigned respectfully disagrees with the Court's narrow reading in *Property One* of the Louisiana
Supreme Court's holding in *Walters,* as barring only unjust enrichment claims plead alongside tort
claims.  Instead, the Court agrees with Judge Melancon of this Court that *Walters* must be read more
broadly to bar alternative claims based in either contract law or tort law. *General Accident Ins. Co. of
America v. Aggreko*, LLC 2012 WL 6738217, *2 (W.D. La. 2012).

*Disaster Response, LLC , supra; Harris Builders, LLC v. URS Corp.*, 861 F.Supp.2d 746, 755-756 (E.D. La. 2012); *Patterson v. Dean Morris, LLP*, 2011 WL 1743617, *7 (E.D. La. 2011).

Additionally, Judge Hicks of this Court expressly rejected the same argument presented by the Partnerships herein in *Wiggins v. Chesapeake Energy Corp.*, 2012 WL 3597131, *2 (W.D. La. 2012) as follows:

> The Wiggins argue that their unjust enrichment claim should survive dismissal because an alternative pleading is permissible and well accepted. . . . The Court is unconvinced by this argument due to the rationale set forth in *Conerly Corp. v. Regions Bank*, No. 08–813, 2008 WL 4975080, 9 (E.D. La. Nov.20, 2008):

> "It is not the success or failure of other causes of action, but rather the existence of other causes of action, that determine whether unjust enrichment can be applied." *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct. App. 2008). That plaintiffs have pled their claims against AmSouth/Regions in the alternative also does not change that plaintiffs have a cause of action for breach of contract against Beechgrove. Unjust enrichment is a remedy of last resort under Louisiana law and "is only applicable to fill a gap in the law where no express remedy is provided." *Board of Sup'rs of La. St. Univ.*, 984 So.2d at 81. Plaintiffs have several other remedies at law for their alleged "unjust impoverishment," both against defendants and against Beechgrove. Plaintiffs therefore fail to state a claim for unjust enrichment.

Finally, the Partnership's procedural argument under the Federal Rules of Civil Procedure was implicitly rejected by the Fifth Circuit in  *Bank of Abbeville & Trust Co.*, 201 Fed. Appx. 988, 2006 WL 2870972 (5th Cir. 2006).  In that case, a bank sued a title company, asserting an unjust enrichment claim, after its attorney and issuing agent fraudulently wrote checks that the bank honored, resulting in an account overdraft. The bank argued that the district court improperly dismissed its unjust enrichment claim because the complaint complied with Rules 8 and 9 of the Federal Rules of Civil Procedure.  The Fifth Circuit rejected these

arguments finding them "misplaced . . .confus[ing] form with substance" because the Federal

pleading rules specify "the conditions of the formal adequacy of a pleading [but] do[] not

specify the conditions of its substantive adequacy, that is, its legal merit." *Id*. at 990.  The

Court then held that dismissal of the unjust enrichment claim was  proper because under

substantive Louisiana law, the Bank was not entitled to relief "because it [could not]  prove the

fifth element of an unjust enrichment claim – a lack of other remedy at law."  *Id*. at 990-991.

This was so because the Bank had another remedy at law: it could pursue an action against its

customer, the title company's attorney and issuing agent, to recover the amount of the

overdraft.  *Id.* at 991.  In so doing the court expressly noted that the "lack of another remedy is

an element of an unjust enrichment action, not a condition precedent or a defense." *Id.* Thus,

the bank's arguments under Federal Rules of Civil Procedure 8 and 9(c), was rejected because

these rules "address[] merely the form of the complaint, not the claim's substance."  *Id.* at 991-

992.

     For these reasons, summary judgment on the Partnership's unjust enrichment claim will

be granted.

**B.  Third Party Beneficiary**

     Because it is undisputed that the Partnerships were not parties to the alleged contract

between Zaveri and Condor, they can only avail themselves of the benefit of that of contract if

they are third party beneficiaries. *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*,

939 So.2d 1206, 1211 (La. 2006).  Under Louisiana law, a contracting party may stipulate a

benefit for a third person called a third party beneficiary.  La. Civ. Code art. 1978.  Such a

contract provision under Louisiana law is known as a "stipulation *pour autrui*." *Joseph*, 939

So.2d at 1211.  A stipulation *pour autrui* may exist only if the following criteria are met: 1) the

stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided

the third party; and 3) the benefit is not a mere incident of the contract between the promisor

and the promisee.  *Id.* at 1212.

"The most basic requirement of a stipulation *pour autrui* is that the contract manifest a

clear intention to benefit the third party; absent such a clear manifestation, a party claiming to

be a third party beneficiary cannot meet his burden of proof."  *Id.*  (citations omitted).

"The fact that a third party derives a benefit from a contract does not render the contract

*pour autrui*."  *Wallace v. Texaco*, 681 F.2d 1088, 1090 (5th Cir. 1982).   "To create a legal

obligation enforceable by the beneficiary there must be certainty as to the benefit to accrue to

the beneficiary."  *Joseph,* 939 So.2d at 1212. (citations and internal quotations omitted).

"[N]ot every promise, performance of which may be advantageous to a third person,

will create in him an actionable right." *Joseph,* 939 So.2d at 1212  (citations omitted).  "The

benefit to the third party must be a direct benefit; it may not be merely incidental to the

contract" and "that direct benefit to the third party [must] form[] the condition or consideration

for the contract." *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.,* , 48 F.3d 927, 932 (5th

Cir. 1995).

There is no general requirement that stipulations *pour autrui* be in writing.[5]  *Joseph,* 939 So.2d at 1215.  However, a stipulation *pour autrui* is never presumed. *Joseph,* 939 So.2d at 1212.  Rather, "[t]here is a presumption that contracting parties intend to contract for themselves and not third parties."  *Liquid Drill*, 48 F.3d at 933 *citing Allen & Currey Mfg. Co. v. Shreveport Waterworks Co.*, 113 La. 1091, 37 So. 980, 984 (La. 1905).  The party claiming the benefit of an alleged stipulation *pour autrui* bears the burden of proof.  *Joseph,* 939 So.2d at 1212.

After thorough review of the evidence before this Court, the Court concludes that the Partnerships have failed to make a showing sufficient to establish the existence of a stipulation *pour autrui*.  The Partnerships have not adequately met their burden of demonstrating that the contracting parties, the late Ashvin Zaveri ("Zaveri") and Condor, established a stipulation for the benefit of the Partnerships in a manifestly clear manner.  More specifically, the Partnerships have not adequately shown that there was a clearly expressed intention by Condor to stipulate a benefit to the eight partnerships or to the nearly two hundred partner/investor plaintiff's herein.  Accordingly, there is no genuine issue of fact before this Court to preclude the grant of summary judgment on the Partnership's third party beneficiary claim.  Summary Judgment will therefore be granted.

It is undisputed that there is no contract between the Partnerships and Condor.  Rather, the sole alleged contractual relationship is between Zaveri and Condor.  The Partnerships

---

[5]If the contract is required to be in writing, then the stipulation *pour autrui* must also be in writing.  In this case, however, no one asserts a writing requirement.

therefore claim to be third party beneficiaries of this contract.  The Partnerships and the Estate have alleged various theories in support of the existence of a contract which governs the relationship between Zaveri and Condor.  These include an unsigned 1989 model form operating agreement, and verbal agreements and understandings confirmed from time to time by written letters exchanged between the parties. The Court must analyze this evidence to determine whether a stipulation *pour autrui* can be established.[6]

It is clear that the unsigned 1989 model form operating agreement does not contain any provision which could be construed as conferring a benefit on the Partnerships.  Further, the agreement is dated November, 1991, and is alleged to have been  received by Zaveri and approved for execution in January, 1993. [rec. doc. 145, ¶ 20].  However, it is undisputed that only two of the eight partnership plaintiffs existed in 1993. Thus, this agreement cannot be the basis of a stipulation *pour autrui* in favor of the Partnerships.

With regard to claimed verbal agreements and understandings confirmed from time to time by written letters exchanged between the parties, the Court cannot find sufficient indicia of a clearly expressed intention by Condor to stipulate a benefit to the eight partnerships or nearly two hundred partner/investor plaintiff's herein.  The Partnerships rely on a letter dated March 1, 1993 in which Mr. Evitt refers to the percentage of interest that "investors" would receive if the well produced.  However, that letter references a single well and is dated before six of the eight partnership plaintiffs were formed.  At best, this letter merely indicates that

---

[6]*See Joseph,* 939 So.2d at 1214; *Wallace*, 681 F.2d at 1090 (analyzing contractual provisions to determine if a benefit is conferred on a third party).

Condor was aware that Zaveri had solicited investors for partnerships that he created to fulfil his obligations to Condor.  The letter does not clearly manifest any intention by Condor to confer any direct benefit to these unidentified "investors", much less any unidentified investors in other wells or investors in partnerships which had not yet been formed.

The Partnerships also rely on two other letters, an April 10, 1997 letter from Mr. Uhler to Nick Meleo which recognizes that Zaveri had "associates" who were to receive a percentage of the money earned from each project, which money was to be sent to Zaveri, who was responsible for distribution of the funds to the "people involved" because Condor "did not know who was involved or the percentage each person should receive",  and an April 29, 1996 letter from Uhler to Zaveri regarding the JP Ancelet well, wherein Uhler set forth the cost to drill and complete the well and the percentages of the monies earned which would be retained by Condor and received by "investors."  The JP Ancelet well is not a well involved in this action and Mr. Meleo is not an investor partner plaintiff in this litigation.  As such, neither of these letters are sufficient for this Court to find a clearly manifested intention by Condor to confer any direct benefit to the Partnerships or investor/partners in this lawsuit.[7]

The Partnerships also rely on checks received by Condor from partnership accounts and four checks from a single investor partner plaintiff in this litigation, Andrew V. Siracuse, with a memo notation of what appears to state "Napoleonville lease", the deposition testimony of Evitt wherein he confirms that the partnerships and investor partners could believe that they

---

[7]Even if these letters dealt with investor partners and wells at issue in this case, these letters, on their face, fall far short of establishing a stipulation *pour autrui*.

would derive some benefit in exchange for their provision of funds, and checks sent by Condor to alleged investors Mrugendra Mehta (two checks), Nick Meleo (three checks) and Nicols J. Meleo (one check), none of whom are investor partner plaintiff's in this action.

With respect to the partnership and Siracuse checks, assuming that the Siracuse checks are for wells or leases on property involved in this litigation, the fact that Condor received these funds does not clearly evidence intention by Condor to confer any direct benefit to the Partnerships or investor partner plaintiffs in this litigation.  Rather, the bulk of the evidence before this Court merely establishes that any obligation owed by Condor was to Zaveri, and that any obligation owed to the Partnerships was from the Zaveri plaintiffs.  More specifically, the bulk of the evidence suggests that payment by Condor was to be made to Zaveri and his alter ego corporations, Red Fox and ZOG, in accordance with the terms and amounts agreed upon between Zaveri and Condor, and Zaveri in turn made payment to his Partnerships and their investor partners in accordance with the terms and amounts agreed upon between him and the Partnerships and their investor partners.

Likewise, Mr. Evitt's deposition testimony about the beliefs or expectations of a partnership or investor partner have no bearing on this Court's inquiry, whether the contracting parties manifested a clear intention to confer a benefit on the Partnerships.

Additionally, while Condor sent a total of six checks to alleged investors Mrugendra Mehta, Nick Meleo and Nicols J. Meleo, none of these alleged investor partners are plaintiffs in this action.  Accordingly, the Court is unsure of the relevance, if any, of this evidence. Moreover, even if these persons were investor partners of the partnerships involved in this

litigation, the fact that Condor sent only six checks to someone other than Zaveri, or his alter-ego companies, Red Fox or ZOG, over the course of ten years, is simply inadequate for this Court to find the requisite clear intention to confer a benefit on the Partnerships.

Finally, the mere fact that Condor knew that Zaveri, the contracting party, would form and use partnerships comprised of investor partners, who could ultimately derive benefit from the contract between Condor and Zaveri, does not evidence a clear manifestation of an intention by Condor to confer any direct benefit to the partnerships or investor partners sufficient for this Court to find the existence of a stipulation *pour autrui*.  Rather, the situation before this Court is akin to that presented in *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc*., 48 F.3d 927 (5th Cir. 1995) and  *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1211 (La. 2006) relied upon by Condor.[8]

In  *Liquid Drill*, the court found that although payment by the owner to a well operator facilitated the operator's ability to pay the operator's subcontractors, such a situation did not confer a stipulation *pour autrui* by the owner in favor of the subcontractors.  *Id.* at 932-933. Similarly, in this case, the fact that Condor distributed funds required by the contract between Zaveri and Condor directly to Zavari (or his alter ego corporations), which funds were then

---

[8]The Court does not find this case analogous to *Merco Manufacturing, Inc. v. J.P. McMichael Construction Co.,* 372 F.Supp.967 (W.D. La. 1974), the case relied on by the Partnerships. In *Merco*, a landowner contracted with a general contractor to build a manufacturing plant. A sub-subcontractor, Merco, brought suit against the general contractor, alleging that it was a third party beneficiary of a contract between the general contractor and a subcontractor. The written contract between the general contractor and the subcontractor specifically provided that the general contractor would make payment for supplies jointly to Merco and to the subcontractor. This contractual provision "gave Merco a joint right to payment" under the contract between the general contractor and the subcontractor.  *Id.*  at 970-972. There is no such provision present in this case; there is no provision that is even close.

used by Zaveri to pay the partnerships and investor partners in accordance with contractual obligations owed by Zaveri to them, does not confer a stipulation *pour autrui* by Condor in favor of the Partnerships.

In *Joseph*, the Louisiana Supreme Court found that anesthesiologists were not third party beneficiaries of a contract between a hospital and their anesthesiology group.  Although the doctors performed the services to satisfy the obligations of the group, and the doctors would ultimately derive benefit from the contract between the hospital and the group by virtue of their employment with the group, any such benefit was not direct, but merely a mere incident of the contract between the group and the hospital.  *Id*. at 1214.  The doctors could not demand performance of the contract by the hospital, and the hospital did not owe any obligation to perform directly to the individual doctors.  *Id*.

The partnerships and investor partners in this case, like the doctors in *Joseph*, facilitated Zaveri's performance of the contract between Zaveri and Condor, and ultimately derived benefit from the contract between Zaveri and Condor by virtue of their status as partners in accordance with their partnership agreements with Zaveri.  However, as was the case with the doctors in *Joseph*, such benefit was not direct, but merely a mere incident of the contract between Zavari and Condor.

This Court's conclusion is bolstered by the very limited number of cases in which a stipulation *pour autrui* has been found, and the absence of any authority, found by the Court or

cited by the parties, in which a stipulation *pour autrui* was found under similar factual circumstances.  The Court's conclusion is further bolstered by the presumption that parties intend to contract for themselves, not third parties.

For these reasons, there is no genuine issue of fact before this Court to preclude the grant of summary judgment on the Partnership's third party beneficiary claim.  Summary Judgment will therefore be granted.

## C. Punitive Damages

It is well settled Louisiana law that punitive damages are not allowed in civil cases unless specifically provided for by statute. In the absence of such a specific statutory provision, only compensatory damages may be recovered. *See International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La.1988); *Ross v. Conoco, Inc*. 828 So.2d 546, 555 (La. 2002). Nowhere in the pleadings do the Partnerships identify a statutory provision which allows recovery of punitive damages for the Louisiana state law claims that they assert against any of the defendants.  Moreover, although the Louisiana Legislature has enacted various civil statutes allowing for the recovery of punitive damages, none of those statutes provide for such recovery under the legal or factual circumstances of this case.  Accordingly, summary judgment on the Partnership's punitive damage claim will be granted.

## II.  Claims of the Zaveri Plaintiffs

## A.  Breach of Fiduciary Duty

Generally, whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties. As a basic proposition,

for a fiduciary duty to exist, there must be a fiduciary relationship between the parties.   "The defining characteristic of a fiduciary relationship . . . is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Scheffler v. Adams and Reese, LLP*, 950 So.2d 641, 647 (La. 2007) *citing Plaquemines Parish Commission Council*, 502 So.2d at 1040 and *Hagerty*, 251 La. at 493, 205 So.2d at 374-375.  Thus, "A fiduciary relationship has been described as 'one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other.' " *Id. citing Plaquemines Parish Commission Council*, 502 So.2d at 1040  *quoting Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985).

In this case, there is no evidence that Condor exercised any superiority or special influence over Zaveri.  To the contrary, the evidence before this Court demonstrates that two parties of equal bargaining power negotiated and entered into, at arms length, a contract for the mutual benefit of both.[9]  Indeed, the unsigned 1989 Model Form Operating Agreement alleged by the Zavari plaintiffs as governing the relationship between the parties expressly states "[i]n their relations with each other under this agreement, the parties shall not be considered fiduciaries or to have established a confidential relationship . . . ." [rec. doc. 145, ¶ 20; rec. doc. 224-10, pg. 14, Art. VII, ¶ A].  As such, there is no evidence supporting the existence of a fiduciary relationship between Condor and the Zaveri plaintiffs.  Accordingly, there is no

---

[9]While the Zaveri plaintiff's cite the duty of a mineral lessee to perform in good faith as a reasonably prudent operator, under Louisiana law, this duty does not transform arms-length dealing into a fiduciary relationship.

19

genuine issue of material fact precluding summary judgment on the Zaveri plaintiff's breach of fiduciary duty claim.

## B.  Constructive Trust

The purpose of a constructive trust "is to impose an equitable lien on property because of a fiduciary relationship between the parties." *Schwegmann v. Schwegmann*, 441 So.2d 316, 323 (5th Cir. 1983).   As set forth above, the Zaveri plaintiffs have failed to demonstrate the existence of a fiduciary relationship with Condor.  Furthermore, even if such a relationship existed, it is clear that constructive trusts are not recognized under Louisiana law. *Schwegmann*, 441 So.2d at 323 (citations omitted); *Marple v. Kurzweg*, 902 F.2d 397, 399 (5th Cir. 1990) *citing Mansfield Hardwood Company v. Johnson*, 268 F.2d 317 (5th Cir. 1959); *Matter of Oxford Management, Inc.*, 4 F.3d 1329, 1336 (5th Cir. 1993);  *Succession of Gaston Koontz*, 49 So.3d 1054, 1058 (La. App. 3rd Cir. 2010).  The Zaveri plaintiffs provide no authority to the contrary.[10]

For these reasons, summary judgment on the Zaveri plaintiffs' constructive trust claim will be granted.

## C.  Unjust Enrichment

For the reasons set forth above with respect to the Partnerships' unjust enrichment claim, summary judgment on the unjust enrichment claim asserted by the Zaveri plaintiffs must also be granted.  The Zaveri plaintiffs cannot satisfy the fifth element of their claim, that is, that

---

[10]The sole case cited by the Zaveri plaintiffs was decided under federal ERISA law.  *Reynolds v. S.Cent. Regional Laborers Health & Welfare Fund*, 306 F.Supp.2d 646, 650 (W.D. La. 2004).

there be no other remedy at law available.  The Zaveri plaintiffs have alleged numerous other available remedies at law, including a breach of contract claim against Condor.  As such, they cannot assert an unjust enrichment claim.  Summary judgment on this claim is therefore proper and will be granted.

## D.  Conversion

Under Louisiana law, conversion is an intentional tort, committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's possessory rights, such as when one wrongfully exercises or assumes authority over another's goods, depriving him of possession, permanently or for an indefinite time. *F.G. Bruschweiler Antiques, Ltd. v. GBA Great British Antiques, LLC*, 860 So.2d 644, 649-650 (La. App. 5th Cir. 2003) (citations omitted). The Louisiana Supreme Court has reiterated the necessity of ownership of the thing, for a plaintiff to establish a conversion action. *Id.* at 650 citing  *Dual Drilling Co. v. Mills Equipment Investments, Inc*., 721 So.2d 853, 856 (La. 1998).[11]

---

[11] The Louisiana Supreme Court explained the principles of civilian conversion as follows:

> The Civil Code itself does not identify causes of action for "conversion." However, causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, and enjoyment of movables are protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages. Consequently, the dispossessed owner of a corporeal movable may be accorded one of three actions to enforce his rights of ownership.

*Dual Drilling*, 721 So.2d at 856.

These actions include: a revendicatory action for the recovery of a movable transferred:

With respect to alleged conversion of funds, the Fifth Circuit has articulated three elements which must be proven by the plaintiff: (1) that it owned the funds allegedly misused by the defendant; (2) that the misuse was inconsistent with the plaintiff's rights of ownership and (3) the misuse constituted a wrongful taking of the funds. *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc*., 783 F.2d 480, 484 (5th Cir. 1986).

In this case, the Zaveri plaintiffs claim an ownership interest in a portion of the revenues received by Condor from sale of the oil produced by Condor from its operation of wells in the North Ossun Field pursuant to a mineral lease.  The record establishes that Condor purchased the lease for the North Ossun Field from Phillips Petroleum Company on August 24, 1992 pursuant to a Purchase and Sale Agreement and that Phillips assigned the lease to Condor by Assignment and Bill of Sale dated September 4, 1992, which was effective September 1, 1992. [rec. doc. 232-4].

To establish an ownership interest in the sale proceeds, the Zaveri plaintiffs point to a single letter dated June 27, 1994, co-signed by Zaveri and Evitt, which states that Condor and Zaveri "acquired the oil and gas property known as the North Ossun Field . . . by purchase from Phillips Petroleum Corporation on September 1, 1992." [rec. doc. 232-6].  However, another letter written by Zaveri to Condor on August 25, 1992, near the time the lease was

---

an unjust enrichment action to enforce a quasi-contractual obligation to restore the corporeal movable to the rightful owner or account for the enrichment, and a delictual "tort" action of conversion.  *Id*. at 856-857.  The latter action " is grounded on the unlawful interference with the ownership or possession of a movable and is frequently termed an action for 'conversion' in Louisiana." *Id.* at 857.

assigned to Condor, thanks Evitt for explaining "that Ashvin J. Zaveri is the 50% working interest owner in the entire Ossun Field and all of the existing wells and any wells which will be re-worked and/or drilled in the future." [rec. doc. 232-6].  Several other letters appearing in the record likewise refer to the interest of Zaveri as an "interest", a "working interest" and a "net revenue interest " [rec. doc. 232-6, pg. 5, 12; 232-5, pg. 12, 13].

Given the non-specific and "loose" use of the terms contained in the record, there is insufficient evidence for the Court to find an actual ownership interest in the proceeds of the sale of oil obtained by Condor from Condor's operation of wells on the leased premises to sustain the Zaveri plaintiffs' conversion claim and preclude summary judgment herein.  At best, the letter relied on by the Zaveri plaintiffs recognizes that Zaveri was owed a portion of the revenue from the sale of oil obtained by Condor from Condor's operation of wells on the leased premises, but does not establish any actual ownership interest in the proceeds derived from those sales.  Thus, the letter merely establishes that Condor may be liable to the Zaveri plaintiffs for failing to pay a debt or sums to which the Zaveri plaintiffs may be owed.  Under these circumstances, the Zaveri plaintiffs' remedy is not a delictual action for conversion, but rather, an action in contract, which has been brought.

Moreover, the authorities relied on by the Zaveri plaintiffs fail to support the contention that conversion is a proper remedy under the facts of this case.  *Junior Money Bags Ltd. v. Kern,* 970 F.2d 1 (5th Cir. 1992); *Chrysler Credit Corp. v. Whitney National Bank,* 51 F.3d 553 (5th Cir. 1995).  There was no question in either case of the plaintiff's actual ownership of the

property involved, and each case involved a security interest in the property.  In *Junior Money Bags*, by  attaching a gondola to gain personal jurisdiction over the purchaser of a lease and chattel mortgage on the gondola, the lessor had to allege the property was owned by the lease purchaser.[12]  *Id.* at 11.  In *Chrysler Credit*, the plaintiff had a security interest in the disputed car sales proceeds which expressly provided that "the proceeds of each [car] sale . . . shall be the property of the [plaintiff] mortgagee. . . ."  *Id*. at 555. Accordingly, the car dealer stipulated that it had converted the car sale proceeds.[13]  *Id*. at 557

Rather, the Court finds that the instant factual situation between an operator/lessee and investors is akin to the cases cited by Condor in which a creditor/debtor relationship exists. Such a relationship does not support a claim for conversion.  *See F.G. Bruschweiler v. GBA Great British Antiques,* 860 So.2d 644, 650 (La. App. 5th Cir. 2003); *In re Wittenbrink*, 849 So.2d 18, 21-23 (La. 2003) (recognizing that an action for conversion cannot be maintained for money represented by a general obligation or debt).

For these reasons, summary judgment on the Zaveri plaintiffs' conversion claim will be granted.

**E. Punitive Damages**

For the reasons set forth above with respect to the Partnerships' claim for punitive

---

[12]The Court also found that there had been no conversion because conversion cannot arise from the exercise of a legal right – the right to attach property to gain personal jurisdiction over its owner, and because the lessor had not unequivocally denied the purchaser access to the land on which his property was located.  *Id.* at 11.

[13]The sole issue before the Court was whether the Bank had conspired with the car dealer to convert the car sales proceeds admittedly owned by Chrysler Credit.  *Id*. at 557.

damages, summary judgment on the punitive damage claim asserted by the Zaveri plaintiffs must be granted.  There is no basis under Louisiana law for recovery of such damages under the applicable law or facts of this case.

### F.  Breach of Contract/Breach of ImpliedContract/Breach of Obligation of Good Faith and Fair Dealing

Condor seeks summary judgment on the Zaveri plaintiffs' breach of contract and breach of implied contract claims based on an alleged lack of competent evidence to support the essential elements of these claims.  Condor also argues that because there is insufficient evidence for the Zaveri plaintiffs to prevail on their breach of contract claims, there is no need for the Court to inquire into Condor's good or bad faith performance.

The Court finds, however, that there is sufficient evidence for the plaintiff's breach of contract claims to proceed to trial.  Accordingly, these claims as well as their ancillary or derivative claims based on Condor's performance of the contract shall remain pending.[14]

Therefore, summary judgment on these claims is not properly granted and will therefore be denied.

### G. Declaratory Judgment

Because the Zaveri plaintiffs' breach of contract claims shall remain pending, summary judgment on the Zaveri plaintiffs' corresponding claim for a declaratory judgment regarding their entitlement to any past, present or future revenues from production will likewise be

---

[14]These claims are identified as claims One, Five and Eight.

25

denied.

However, to the extent that the Zaveri plaintiffs' seek a declaratory judgment regarding any ownership interest which is inconsistent with the Court's ruling on their conversion claim, summary judgment will be granted for the reasons set forth above.

## H.  Accounting

Given that the Zaveri plaintiffs' breach of contract claims shall remain pending, to the extent that the Zaveri plaintiffs seek an accounting of Condor's operations based in contract, the same testimony and evidence may be presented to support that claim.  Thus, summary judgment on the Zaveri plaintiffs'  ancillary or derivative claim for an accounting will not be granted.

However, to the extent that the Zaveri plaintiffs seek an accounting based on any alleged fiduciary relationship between them and Condor, summary judgment will be granted for the reasons set forth above with respect to the Zaveri plaintiffs' breach of fiduciary duty claim.

## <u>CONCLUSION</u>

Based on the foregoing reasons, the Motion for Partial Summary Judgment [rec. doc. 224] is **GRANTED** and Motion for Summary Judgment [rec. doc. 227] is **GRANTED in part and DENIED in part**. Accordingly, the remaining claims of the Partnerships and Partner/Investors (unjust enrichment, third party beneficiary and punitive damages) are dismissed; the Zaveri plaintiffs' fiduciary duty, constructive trust,  unjust enrichment, conversion and punitive damages claims are dismissed and the Zaveri plaintiffs' breach of contract, breach of obligation of good faith and fair dealing, declaratory judgment, breach of

implied contract and accounting claims shall remain pending.  The parties shall submit a

Judgment in accordance with this Ruling **within seven (7) days**.

Signed this 18th day of June, 2014, at Lafayette, Louisiana.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE